IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

ADRIANA VANCE, *et al.*

    Plaintiffs,

v.

EL PASO BOARD OF COUNTY COMMISSIONERS, *et al.*

    Defendants.

Case No.: *24-CV-3190-WJM-MDB*

## REPLY IN SUPPORT OF MOTION TO DISMISS

Defendants 3430 N. Academy, LLC and Matthew Haynes, by and through counsel and pursuant to Fed. R. Civ. P. 12(b)(6), hereby submit their Reply in Support of Motion to Dismiss as follows:

### I. INTRODUCTION

On February 14, 2025, 3430 N. Academy, LLC ("3430") and Matthew Haynes ("Haynes") filed their Motion to Dismiss ("Motion"). ECF 34. On February 14, 2025, G.I.G., Inc., Club Q, LLC and Academy3430, LLC joined the Motion. ECF 35. On April 21, 2025, Plaintiffs filed their Omnibus Response in Opposition to Club Q Defendants' Motion to Dismiss ("Response"). ECF 74. The Response refers to the Defendants that have joined in the Motion as "Club Q Defendants." The Court has granted an enlargement of time for the Club Q Defendants to submit this Reply until May 27, 2025. *See* Fed. R. Civ. P. 6.

## II.     ALLEGED FACTS

The Response does not dispute that the Motion has properly stated the facts alleged by Plaintiffs. In large part, the Response merely repeats at length from the allegations from the Second Amended Complaint and Jury Demand ("SAC" or "Complaint"). *See* Response, at 2-4, & 6-8.

## III.    STANDARD OF REVIEW

The Response misstates the law and erroneously asserts that this Court has an obligation to accept the truth of every allegation in the SAC. *See id.* at 4. The Response improperly cites several authorities that predate the current standard that this Court must apply for reviewing motions to dismiss. *See Ashcroft v. Iqbal*, 556 U.S. 662, 678, 129 S. Ct. 1937, 173 L.Ed.2d 868 (2009). In fact, the Response improperly cites multiple case authorities ranging in dates from 1991 to 2007 – all before *Iqbal* – as the suggested basis for this Court's review of the Motion. *See* Response, at 4-5.

Instead, this Court must use the *Iqbal* standards and identify the allegations in the SAC that the Court need not provide an assumption of truth. That is, this Court must identify those allegations that involve legal conclusions, bare assertions, or mere conclusory statements. *Iqbal,* 556 U.S. at 678–80, 129 S. Ct. 1937. Second, this Court must consider the factual allegations "to determine if they plausibly suggest an entitlement to relief." *Id.* at 681, 129 S. Ct. 1937. "Thus, in ruling on a motion to dismiss, a court should disregard all conclusory statements of law and consider whether the remaining specific factual allegations, if assumed to be true, plausibly suggest the defendant is liable." *Kansas Penn Gaming, LLC v. Collins*, 656 F.3d 1210, 1214 (10th

2

Cir. 2011). To resolve the Motion, this Court has a legal duty to winnow allegations entitled to deference for truth from legal conclusions, bare assertions, or mere conclusory statements that should receive no such deference. *Iqbal,* 556 U.S. at 678–80, 129 S. Ct. 1937.

## V.    LEGAL STANDARDS AND ANALYSIS

### A. Colorado Premises Liability Act.

The Response apparently agrees that the Motion properly analyzes the alleged facts under the Colorado Premises Liability Act ("PLA"). *See generally* Colo. Rev. Stat. §§ 13-21-115(4)(a)-(c). Specifically, the Motion and the Response each concludes that 3430 constitutes a landowner and Plaintiffs constitute invitees under the PLA. *See id.* § 13-21-115(7)(a); *see also* Response, at 5-6; Motion, at 9. Invitees may show liability under the PLA if the landowner knew of a danger and unreasonably failed to exercise reasonable care to protect the invitees from that danger. *See* Colo. Rev. Stat. § 13-21-115(4)(c)(I).

The SAC and the Response each rely on arguments for PLA liability that can no longer apply in this case. The Response and the SAC each assert that 3430 and Haynes should have known about potential dangers to Plaintiffs but failed to exercise reasonable care to protect Plaintiffs from those potential dangers. As an example, the SAC and the Response argue that 3430 should have known of the dangers because of a mass shooting at Pulse nightclub in Orlando, Florida, six years earlier and over 1,800 miles away. *See* SAC, ¶ 3; *see also* Response, at 7 & 14.[1]  The SAC and the

---

[1] The investigation into the Pulse nightclub shooting, however, concluded that the

3

Response make the same arguments based on the mass shooting at Marjorie Stoneman Douglas High School five years earlier and over 2,000 miles away.  *See* Response, at 14.  Likewise, the SAC and the Response base their arguments on the mass shooting five years earlier at the Planned Parenthood located in Colorado Springs.  *See id.*  The SAC and the Response could just as easily have claimed that Club Q should have known of the dangers based on the 1966 mass shooting at the University of Texas.[2]  Of course, the mere knowledge of past mass shootings has never improved anyone's ability to avoid the next mass shooting.[3]  Indeed, the SAC and the Response start with the demonstrably false assumption that property owners may clairvoyantly foresee future mass shootings and do something to prevent their occurrences.

In other words, the SAC and the Response repeat the arguments that animated the plaintiffs' claims in *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 467 P.3d 287 (Colo. 2020).  *Wagner* involved a mass shooting at a Planned Parenthood facility in

---

shooter committed an act of terrorism because of the involvement of the United States in middle eastern countries that lacked any connection to the LBTQIA+ community.  *See* https://en.wikipedia.org/wiki/Pulse_nightclub_shooting (last accessed May 27, 2025).
[2] https://www.texastribune.org/2022/06/01/texas-tower-shooting-myth-good-guy-with-gun/ (last accessed May 23, 2025).
[3] *See, e.g.,* J. Nicoletti, S. Spencer-Thomas, & C. Bollinger, *Violence Goes to College: The Authoritative Guide to Prevention and Intervention* (2001), https://archive.org/details/violencegoestoco0000nico/page/n329/mode/2up (last accessed May 23, 2025); J. Nicoletti, *Violence Goes to School: Lessons Learned from Columbine* (1999), https://www.amazon.com/Violence-Goes-School-Lessons-Columbine/dp/0967371023 (last accessed May 26, 2025); Public Mass Shootings: Database Amasses Details of a Half Century of U.S. Mass Shootings with Firearms, Generating Psychosocial Histories (Nat. Institute of Justice), https://nij.ojp.gov/topics/articles/public-mass-shootings-database-amasses-details-half-century-us-mass-shootings (last accessed May 26, 2025).

4

Colorado Springs at which three people died and nine people suffered serious injuries. *Wagner*, at ¶ 1. The plaintiffs in *Wagner* asserted that Planned Parenthood had a duty: (1) to provide safe and secure facilities; (2) to foresee violent attacks; (3) to develop guidelines, to communicate, and to warn about dangers; and (4) to provide proper security. *Id.* ¶¶ 8, & 9. The dissenting justices in *Wagner* asserted that landowners should never become liable for the irrational acts of a mass murderer. *Id.* ¶ 60. The *Wagner* dissent argued that the mere receipt of threats of violence would make a "business uninsurable or require impossibly expensive fortifications." *Id.* The *Wagner* dissent argued that the PLA should apply in mass shooting circumstances only if landowners' actions became the predominant cause of injuries. *Id.* ¶¶ 73 & 74. The *Wagner* dissent noted that any "extra security measures pale in comparison to the conduct of actors bent on inflicting mass casualties who do not employ a rational cost/benefit calculus. And for this reason, weighing what security measures a landowner might adopt to protect against [mass shooters] is not bounded by reasonableness." *Id.* ¶ 75. The *Wagner* dissent concluded that because reason does not motivate mass shooters, the law cannot rationally ask businesses to apply a cost/benefit analysis regarding what preventative measures might prevent or mitigate the harm caused by a shooter's senseless acts of violence. *Id.* ¶ 76.

Relying on the dissent in *Wagner*, the Colorado General Assembly amended the PLA to constrain its application and scope:

> (e)(I) *The Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 2020 CO 51, 467 P.3d 287, and *Wagner v. Planned Parenthood Federation of America, Inc.*, 2019 COA 26, 471 P.3d 1089, decisions do not accurately reflect the intent of the general assembly regarding landowner liability and

5

> *must **not** be relied upon* in applying this section to the extent that the majority opinions determined:
>
> (A) The foreseeability of third-party criminal conduct based upon whether the goods or services offered by a landowner are controversial; and
>
> (B) That a landowner could be held liable as a substantial factor in causing harm *without considering whether a third-party criminal act was the **predominant** cause of that harm*, as noted by the dissenting justices and judge.

Colo. Rev. Stat. § 13-21-115(4) (emphasis added); *see also* 2022 Colo. Legis. Serv. Ch. 75 (S.B. 22-115), § 2, eff. Apr. 7, 2022. Thus, since the 2022 amendments, the PLA requires courts to undertake a completely different analysis in mass shooting cases such as this one. Under the Amended PLA, a court must determine as a matter of law whether a predominant cause exists. *Walcott v. Total Petroleum, Inc.*, 964 P.2d 609, 612 (Colo. App. 1998), *cert. denied; see also Nowlan v. Cinemark Holdings, Inc.*, 2016 WL 4092468, *3 (D. Colo. 2016) (unpublished); *Sanders v. Acclaim Entm't, Inc.*, 188 F. Supp. 2d 1264, 1275 (D. Colo. 2002).

Even before the PLA amendments, this Court has presciently considered and properly applied a "predominate cause" analysis in cases involving mass shooters. *See Castaldo v. Stone*, 92 F.Supp.2d 1124, 1133 (D. Colo. 2001) (Babcock, J.). This Court held that the shooters at Columbine High School "were the *predominant*, if not sole, cause of Plaintiffs' injuries." *Id.* at 1171 (emphasis added); *see also Nowlan*, 2016 WL 4092468, *3. Later, this Court dismissed claims against the organizer of a gun show at which the Columbine High School shooters purchased a shotgun. *Ireland v. Jefferson County Sheriff's Department*, 193 F. Supp. 2d 1201, 1231–32 (D. Colo. 2002) (Babcock, J.). The Court held that "[e]ven if [the gun show organizer's] actions contributed in some

6

way to Plaintiff's injuries," the shooters' actions "were the *predominant*, if not sole cause" of the injuries. *Id.* at 1232 (emphasis added); *see also Nowlan*, 2016 WL 4092468, *3.

This Court also addressed the proximate cause issue in one of the Aurora Theatre shootings cases. *Phillips v. Lucky Gunner*, LLC, 84 F.Supp.3d 1216, 1228 (D. Colo. 2015) (Matsch, J.). This Court held that "[t]here can be no question that [the shooter's] deliberate, premeditated criminal acts were the *predominant* cause of plaintiffs' daughter's death." *Id.* (emphasis added); *see also Nowlan*, 2016 WL 4092468, *3. In another Aurora Theatre shooting case, this Court held: "plaintiffs claim that defendants failed to provide certain safety measures …. Even if such omissions contributed in some way to the injuries and deaths, the [shooter's] premeditated and intentional actions were the *predominant* cause of plaintiffs' losses." *Nowlan*, 2016 WL 4092468, *3 (Jackson, J.) (emphasis added).

Plaintiffs cannot prevail against 3430 or Haynes under the legal standards of the Amended PLA. *See* Colo. Rev. Stat. § 13-21-115(4)(e)(1)(B) (courts must consider "whether a third-party criminal act was the predominant cause of th[e] harm"). This Court should hold as a matter of law that the shooter in this case became "the predominant, if not sole, cause of Plaintiffs' injuries." *Castaldo*, 92 F. Supp. 2d at 1171. "Even if [3430's or Haynes's] actions contributed in some way to Plaintiff's injuries," the shooter's actions "were the predominant, if not sole cause" of those injuries. *Ireland*, 193 F. Supp. 2d at 1232. "There can be no question that [the shooter's] deliberate, premeditated criminal acts were the predominant cause of … death. [The shooter]

7

meticulously prepared for … crime, arriving … equipped with multiple firearms, ammunition, and other gear …." *Phillips*, 84 F. Supp. 3d at 1228. "[P]laintiffs claim that defendants failed to provide certain safety measures …. Even if such omissions contributed in some way to the injuries and deaths, the [shooter's] premeditated and intentional actions were the *predominant* cause of plaintiffs' losses." *Nowlan*, 2016 WL 4092468, *3 (emphasis added).

The Response includes an irrelevant extended discussion about this Court's opinion in *Traynom v. Cinemark USA, Inc.*, 940 F. Supp. 2d 1339 (D. Colo. 2013). *See* Response, at 2 & 10. *Traynom*, however, preceded the amendments to the PLA by *nine years*. *See* 2022 Colo. Legis. Serv. Ch. 75 (S.B. 22-115), § 2, eff. Apr. 7, 2022. Therefore, *Traynom* offers almost no guidance to this Court for resolving the Motion. Indeed, the SAC and the Response do not, and cannot, allege that, if 3430 and Haynes had done something differently, then the shooter would not still have become the predominant cause for Plaintiffs' injuries and deaths.[4] Accordingly, the SAC and the Response cannot allege that the predominant cause of Plaintiffs' injuries and deaths arose from anything other than the criminal acts of the shooter. Thus, this Court should dismiss the PLA claim.

**B. Exclusive Remedy under the PLA.**

---

[4] Indeed, safety measures with respect to the *inside* of Club Q would not necessarily have preventing acts of violence against customers *outside* of Club Q. *See* https://en.wikipedia.org/wiki/Manchester_Arena_bombing (mass casualties from bombing outside of Ariana Grande concert) (last access May 23, 2025).

8

Plaintiffs have declined to assert the appropriate remedy against the correct parties. In mass shooting cases in Colorado, the PLA prohibits recovery against any landowner because only the shooter will constitute the "predominant" cause of injury. *See* Part V(A), *above*. Yet, in other mass shooting cases, plaintiffs have obtained relief against parties other than landowners. For example, some mass shooting victims have recovered against firearm manufacturers that have aggressively marketed assault weapons to disaffected and troubled youth.[5]

The Response does not dispute the legal authorities that dictate the PLA as the "exclusive remedy" available for parties injured on the property of another. *Nordin v. Madden*, 148 P.3d 218, 219 (Colo. App. 2006); *Vigil v. Franklin*, 103 P.3d 322, 327 (Colo. 2004); *see also Corder v. Folds*, 292 P.3d 1177, 1178 (Colo. App. 2012). *Henderson v. Master Klean Janitorial, Inc.*, 70 P.3d 612, 613 (Colo. App. 2003); *Teneyck v. Roller Hockey Colorado, Ltd.*, 10 P.3d 707, 709 (Colo. App. 2000); *Casey v. Christie Lodge Owners Ass'n, Inc.*, 923 P.2d 365, 367–68 (Colo. App. 1996). Consequently, Plaintiffs may not recover under any other theory of negligence, general, or otherwise. *Thornbury v. Allen*, 991 P.2d 335, 340 (Colo. App. 1999). In other words, the Response does not dispute that the PLA negates Plaintiffs' ability to recover under any common law tort theory such as negligence. *Sofford v. Schindler Elevator Corp.*, 954 F. Supp. 1459, 1461 (D. Colo. 1997).

---

[5] https://firearmslaw.duke.edu/2022/04/the-road-to-the-sandy-hook-settlement (last accessed May 23, 2025).

The Colorado General Assembly has declared the PLA the exclusive remedy for injuries occurring on the property of another.  *See generally* Colo. R. Stat. § 13-21-115.  Thus, the General Assembly has legislatively negated Plaintiff's ability to plead a common law negligence claim in the alternative in this case.  *Cf.* Colo. R. Civ. P. 8(e)(2).  If Plaintiffs had only pled common law claims in tort under the facts alleged in the SAC, the PLA would still require this Court to dismiss the tort claim.  *See* Colo. Rev. Stat. § 13-21-115(1)(d); *see also Bush v. Travel Centers of America, Inc.*, 2022 WL 2528325, *10.  Likewise, if an injured Club Q employee had filed the same claims, this Court would have no discretion but to dismiss the claims under statutory workers' compensation exclusivity.  *See* Colo. Rev. Stat. §§ 8-41-102 & -104.

The Response also suggests that the Court should permit Plaintiffs to amend the SAC to avoid dismissal of negligence claims.  Response, at 16.  Yet, the Response does not identify any facts that Plaintiffs could allege to salvage the otherwise non-existent common law tort claim.  *See id.*  Moreover, as justification for the negligence claim, the Response merely quotes at length the SAC's existing allegations that the Motion has already accepted as true.  *See id.* at 15.

The Response also asserts that the Court should permit Plaintiffs to conduct discovery regarding the factual allegations that the Motion has already accepted as true.  The Response does not, and cannot, even hint at how discovery about facts already accepted as true could possibly change the legal outcome of the Motion.  First, to permit discovery, the Court would need to turn the spirit of the Federal Rules of Civil Procedure on its head.  The Rules of Civil Procedure require attorneys and their clients to conduct

10

a proper investigation before signing allegations in pleadings. Fed. R. Civ. P. 11(a); *see also* Colo. R. Prof. Resp. 3.1; *see also id.* at 3.3(a)(3). If Plaintiffs require discovery before they can support a claim for common law negligence, then Plaintiffs should dismiss their negligence claims without prejudice. If, but only if, Plaintiffs later uncover evidence to support a common law negligence claim through discovery, then Plaintiffs should amend the pleadings and add the claim. *See* Fed. R. Civ. P. 15(a).

Second, the discovery of new facts will not change the legal conclusion that Plaintiffs' injuries occurred on the property of another, and that the PLA exclusively controls any legal remedy. *See* Colo. R. Stat. § 13-21-115(1)(d). As a matter of law, the proper application of the PLA legally precludes a common law tort claim irrespective of the underlying facts. *Nordin*, 148 P.3d at 219; *Vigil*, 103 P.3d at 327; *Corder*, 292 P.3d at 1178; *Henderson*, 70 P.3d at 613; *Teneyck*, 10 P.3d at 709; *Casey*, 923 P.2d at 367–68; *Thornbury*, 991 P.2d at 340; *Sofford*, 954 F. Supp. at 1461.

## VI.   CONCLUSION

For the foregoing reasons, 3430 and Haynes respectfully request and pray this Court for an Order as follows:

- A. Dismissing Plaintiffs' claims under the Amended PLA because the shooter remained the predominant proximate cause of Plaintiffs' injuries as a matter of law.
- B. Dismissing Plaintiffs' claims in common law negligence because the Amended PLA represents the exclusive remedy for Plaintiffs' injuries as a matter of law.

11

C. Awarding such other, further, and different relief as the Court deems just and proper under the circumstances.

Dated: May 27, 2025.

          **SGR, LLC**

          */s/ Jonathan M. Abramson*
          Jonathan M. Abramson

          */s/ Paul D. Godec*
          Paul D. Godec
          3900 East Mexico Avenue, Suite 700
          Denver, Colorado 80210
          (303) 320-0509
          pgodec@sgrllc.com
          jabramson@sgrllc.com
          *Attorneys for 3430 North Academy, LLC and Matthew Haynes*

### CERTIFICATE OF SERVICE

**I HEREBY CERTIFY** that on this 27th day of May 2025, I electronically filed a true and correct copy of the above and foregoing **REPLY IN SUPPORT OF MOTION TO DISMISS** with the Clerk of Court using the CM/ECF system, which will send notification of such filing to the following email addresses:

Bradley T. Bufkin
Matthew L. Schneider
Bufkin & Schnider Law, LLC
2 N. Nevada, Suite 1140
Colorado Springs, CO 80903
brad@bbmslaw.com
matthew@bbmslaw.com
*Attorneys for Consolidated Plaintiff and Interested Party Barrett Hudson*

Antonio M. Romanucci
Patrick A. Huber
Sarah M. Raisch
Romanucci & Bladin, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
aromanucci@rblaw.net
phuber@rblaw.net
sraisch@rblaw.net
*Attorneys for Vance Plaintiffs*

Nathan J. Whitney
Bryan E. Schmid
El Paso County Government
200 S. Cascade Ave.
Colorado Springs, CO 80903
nathanwhitney@elpasoco.com
bryanschmid@elpasoco.com
*Attorneys for El Paso County Defendants*

Cameron Lee Caldwell
Michael Dickson Kuhn
KLCS, P.C.
431 North Cascade Avenue, Suite 1
Colorado Springs, CO 80903
ccaldwell@klcs.law
mkuhn@klcs.law
*Attorneys for G.I.G, Inc., Academy3430, LLC, and Club Q, LLC*

Roberta J. Sunkin
Allan D. NewDelman, P.C.
80 East Columbus Avenue
Phoenix, AZ 85012
anewdelman@adnlaw.net
*Bankruptcy Attorney for Defendant Nicholas Grzecka*

**Via U.S. Mail, First-Class**
Nicholas Grzecka
4202 N. 28th St., Suite 14
Phoenix, AZ 85016
nicgrzecka@gmail.com
*Defendant Pro Se*

*/s/ Mariel Juniper*
Legal Secretary, SGR, LLC