**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO
Judge William J. Martínez**

Civil Action No. 24-cv-3190-WJM-MDB
*Consolidated with Civil Action No. 1:24-cv-3193-WJM-MDB*

ADRIANA VANCE,
BARRETT HUDSON,
TANYA BEAL,
JULIA RUMP,
JOHN ARCEDIANO,
JANCARLOS DEL VALLE,
ASHTIN GAMBLIN
JERECHO LOVEALL,
ANTHONY MALBURG,
CHARLENE SLAUGH,
JAMES SLAUGH,
BRIANNA WASHINGTON

      Plaintiffs,

v.

EL PASO COUNTY OF COMMISSIONERS,
BILL ELDER,
G.L.G., INC.,
CLUB Q, LLC,
3430 N. ACADEMY, LLC,
MATTHEW HAYNES,
KENNETH ROMINES,
NICHOLAS GRZECKA

      Defendants.

---

**ORDER GRANTING IN PART AND DENYING IN PART
LANDOWNERS' MOTION TO DISMISS**

---

      Before the Court is Defendants 3430 N. Academy, LLC, Matthew Haynes, G.I.G.,

Inc., Club Q, LLC, and Academy 3430, LLC's[1] ("Defendants" or "Landowners") motion

---

[1] Defendants G.I.G., Inc., Club Q, LLC, and Academy 3430, LLC seek leave to join 3430

to dismiss (ECF Nos. 34, 58) certain claims asserted by Plaintiffs James Slaugh,

Brianna Winningham, Adriana Vance, Tanya Beal, Julia Rump, John Arcediano,

Jancarlos Del Valle, Ashtin Gamblin, Jerecho Loveall, Anthony Malburg, and Charlene

Slaugh ("Plaintiffs") in their Second Amended Complaint ("SAC") (ECF No. 29).

Plaintiffs filed a response, to which Defendants filed a reply.  (ECF Nos. 74, 87.)

    For the following reasons, the motion to dismiss is granted in part and denied in

part.

## I.    BACKGROUND[2]

    On November 19, 2022, Anderson Aldrich committed a horrific mass shooting at

Club Q, an LGBTQ+ nightclub in Colorado Springs, Colorado, killing five people and

injuring at least 25 others.  (ECF No. 29 at 14.)  For these acts, Aldrich was sentenced

to five consecutive life sentences in state court, and 55 concurrent life sentences to run

consecutive to 190 years' imprisonment in federal court.  (*Id.* at 17.)

    This civil lawsuit stems from that mass shooting.  Plaintiffs—individuals who were

injured and survivors of those who were killed by Aldrich—assert three claims against

Defendants: (1) liability under the Colorado Premises Liability Act ("CPLA"), § 13-21-

115, C.R.S. 2025, (2) negligence, and (3) wrongful death.  (*Id.* at ¶¶ 269–303.)  In short,

---

N. Academy, LLC and Haynes's motion to dismiss; alternatively, they independently move to
dismiss Plaintiffs' claims for largely the same reasons asserted in the motion to dismiss.  (*See
generally* ECF Nos. 35, 59.)  Plaintiffs do not appear to oppose the motion for leave to join, as
they refer to all these defendants collectively throughout their response.  (ECF No. 74 at 4 n.1.)
Hence, the Court grants the motion for leave (ECF Nos. 35, 59) insofar as it seeks to join 3430
N. Academy LLC and Haynes's motion to dismiss.

    [2] The following factual summary is drawn from the Plaintiffs' Second Amended
Complaint (ECF No. 29), except if otherwise noted.  The Court assumes the allegations in the
Second Amended Complaint to be true for the purposes of deciding the motion to dismiss.
*Ridge at Red Hawk, L.L.C. v. Schneider*, 493 F.3d 1174, 1177 (10th Cir. 2007).

Plaintiffs allege that Defendants "failed to take basic and reasonable precautions in the face of [well-documented and escalating threats facing LGBTQIA+ spaces across the country], despite advertising Club Q as a 'safe space' for the LGBTQIA+ community." (ECF No. 74 at 3.)  More specifically, Plaintiffs allege that

> Defendants reduced security staffing from five to one unarmed employee (SAC ¶¶ 9, 142, 144, and FAC ¶¶ 9, 114, 116), failed to implement active shooter protocols (SAC ¶¶ 151, 157, and FAC ¶¶ 123, 128), failed to use metal detectors they had in their possession (SAC ¶ 172, and FAC ¶ 143), ignored warnings and specific threats to the venue (SAC ¶¶ 182–184, and FAC ¶¶ 153–155), and left the premises with only one unencumbered means of exit.  (SAC ¶¶ 158–160, and FAC ¶¶ 129–131).

(*Id.*)

Defendants move to dismiss the CPLA claim on the ground that "the alleged actions of [Defendants] cannot constitute the predominant proximate cause of Plaintiffs' injuries."  (ECF No. 34 at 13.)  Defendants additionally move to dismiss the negligence and wrongful death claims on the ground that the CPLA "is the exclusive remedy" to redress Plaintiffs' injuries.  (*Id.* at 18.)

## II.    LEGAL STANDARD

In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), courts "must accept all the well-pleaded allegations of the complaint as true and must construe them in the light most favorable to the plaintiff."  *In re Gold Res. Corp. Sec. Litig.*, 776 F.3d 1103, 1108 (10th Cir. 2015) (citation omitted).  "To survive a motion to dismiss," the complaint need not contain "detailed factual allegations," but it "must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678, (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550

U.S. 544, 555, 570 (2007)).  "Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice."  *Id.*

### III.    ANALYSIS

### A.  CPLA Claim

Defendants contend that Plaintiffs' CPLA claim must be dismissed because, as a matter of law, the mass shooting committed by Aldrich was the "predominant cause" of Plaintiffs' injuries.  (ECF No. 34 at 13.)  Because the pertinent caselaw and legislative authority supports this position, the Court is obliged to dismiss the CPLA claim.

The CPLA "provides the sole remedy against landowners for injuries on their property." *Martinez v. Cast, LLC*, 2025 WL 865402, at *1 (Colo. App. 2025); *see also Warembourg v. Excel Elec., Inc.*, 471 P.3d 1213, 1221 (Colo. App. 2020) ("The General Assembly enacted the [CPLA] to 'establish a comprehensive and exclusive specification of the duties landowners owe to those injured on their property.'") (citation omitted).  It states as follows: "In any civil action brought against a landowner by a person who alleges injury occurring while on the real property of another and by reason of the condition of such property, or activities conducted or circumstances existing on such property, the landowner is liable only as provided in" section 13-21-115(4).  § 13-21-115(2).  The CPLA then "divides those persons to whom a landowner owes a duty of care into three categories—trespassers, invitees, and licensees."  *Id.*  "A landowner owes the greatest duty of care to an invitee, a lesser duty to a licensee, and the least duty to a trespasser." *Warembourg*, 471 P.3d at 1221 (citation omitted).

Defendants concede at this stage of litigation that they are landowners and that Plaintiffs are invitees under the CPLA.  (ECF No. 34 at 9.)  As a result, Plaintiffs "may

recover for damages caused by the [Defendants'] unreasonable failure to exercise

reasonable care to protect against dangers the [Defendants] actually knew about or

should have known about." § 13-21-115(4)(c)(I).

Still, to plead a CPLA claim, Plaintiffs must plausibly allege that Defendants

caused their injuries. *See id.* (establishing liability where a plaintiff's injury is "caused

by" a landowner's conduct or lack thereof). Specifically, Plaintiffs must plausibly allege,

as relevant here, that Defendants' tortious conduct was a proximate cause of their

injuries, *i.e.*, that their conduct "constitutes a 'substantial factor' in producing the injury."

*Nowlan v. Cinemark Holdings, Inc.*, 2016 WL 4092468, at *2 (D. Colo. June 24, 2016);

*see also North Colo. Medical Ctr. v. Comm. on Anticompetitive Conduct*, 914 P.2d 902,

908 (Colo. 1996) ("Colorado's proximate cause [law] is intended to ensure that casual

and unsubstantial causes do not become actionable."). "[T]here can be more than one

proximate cause or, more specifically, substantial causative factor, of an injury." *Smith*

*v. Terumo Cardiovascular Sys. Corp.*, 2017 WL 2985749, at *4 (D. Utah July 12, 2017).

Yet "[o]ne factor 'may have such a predominant effect' in causing the [harm] 'as to make

the effect of [another factor] insignificant and, therefore, to prevent it from being a

substantial factor.'" *Nowlan*, 2016 WL 4092468, at *2 (quoting *Smith v. State*

*Compensation Ins. Fund*, 749 P.2d 462, 464 (Colo. App. 1987)). While the existence of

proximate cause ordinarily presents a fact question for a jury to decide, whether one

cause predominates over all others may present a legal question for a court to decide in

certain circumstances. *Id.*

The Colorado Supreme Court and General Assembly have somewhat recently

weighed in on whether a landowner's tortious conduct can constitute a substantial factor

in proximately causing a victim's injuries in a mass shooting case. Their determinations have essentially foreclosed Plaintiffs' CPLA claim here.

The Court starts with *Rocky Mountain Planned Parenthood, Inc. v. Wagner*, 467 P.3d 287 (Colo. 2020). That case arose from a 2015 mass shooting at Planned Parenthood of the Rocky Mountains ("PPRM") in Colorado Springs, "which left three people dead and nine seriously injured." *Id.* at 288. The trial court granted summary judgment in PPRM's favor on the plaintiffs' CPLA claim, concluding as a matter of law that the shooter's conduct was the predominant cause of the plaintiffs' injuries. *See id.* at 290 ("The district court agreed with PPRM's assertion that, to the extent it had contributed to the plaintiffs' injuries, [the shooter's] actions predominate by orders of magnitude on the issue of causation.'"). A bare majority of the Colorado Supreme Court rejected this summary judgment determination, "conclud[ing] that a genuine issue of material fact exists as to whether [the shooter] was the predominant cause of the plaintiffs' injuries." *Id.* at 291. The majority summarized its view as follows: "The narrow question before us is whether PPRM has shown that, as a matter of law, [the shooter] was the predominant cause of the plaintiffs' losses such that no reasonable jury could reach a different conclusion. On the evidence in the summary judgment record before us, we cannot say that PPRM has met this difficult standard." *Id.* at 293. In reaching this conclusion, the majority disavowed the proposition "that summary judgment is required in virtually every case involving a mass shooting because the shooter's actions will almost always be the predominant cause of the victims' injuries." *Id.* at 294.

Three justices dissented on the CPLA issue. Noting that "[t]he summary judgment action now before [the court] turns on proximate cause," the dissent opined

that "the premeditated and intentional actions of a mass shooter are the 'predominant'
cause of the injuries he inflicts such that any negligence on the part of a property owner
simply is not a 'substantial factor' in causing those injuries." *Id.* at 300. The dissent
urged that "we must acknowledge that the advent of the modern mass shooting like that
committed at PPRM's facilities truly tests the boundaries of the proximate cause inquiry
(and, indeed, of premises liability law)." *Id.* Hence, in the dissent's view, "because
mass shooters are not animated by reason or cost/benefit analysis, it is irrational to ask
businesses—*or jurors*—to engage in the cost/benefit analysis of determining what sorts
of preventative measures are sufficient to prevent or mitigate the harm caused by a
shooter's senseless acts of violence." *Id.* (emphasis added). Accordingly, the dissent
would have held that the "maniacal determination of the shooter himself" is the
"overwhelming—predominant—cause of harm to victims of mass shootings."[3] *Id.* at
301.

     *Wagner* prompted Colorado's General Assembly to amend the CPLA. In 2022,
the legislature clarified that

> [t]he *Rocky Mountain Planned Parenthood, Inc. v. Wagner*,
> 2020 CO 51, 467 P.3d 287, and *Wagner v. Planned
> Parenthood Federation of America, Inc.*, 2019 COA 26, 471
> P.3d 1089, decisions do not accurately reflect the intent of
> the general assembly regarding landowner liability and must
> not be relied upon in applying this section to the extent that
> the majority opinions determined:
>
> (A) The foreseeability of third-party criminal conduct based
> upon whether the goods or services offered by a landowner
> are controversial; and

---

[3] Although the dissent suggested at the end of its analysis that its views were confined
"to the PPRM-specific issue in this case," its reasoning seems to apply broadly to "virtually every
case involving a mass shooting" under the CPLA. *Wagner*, 467 P.3d at 294, 301.

(B) That a landowner could be held liable as a substantial
factor in causing harm without considering[4] whether a third-
party criminal act was the predominant cause of that harm,
as noted by the dissenting justices and judge.

(II) In making this declaration, the general assembly does
not intend to reject or otherwise disturb any judicial decision
other than the *Wagner* decisions.

§ 13-21-115 (e)(I)–(II) (footnote added).

Applying *Wagner* and the amended portions of the CPLA reproduced above, the
Court feels constrained to conclude as a matter of law that Aldrich's conduct was the
predominant cause of Plaintiffs' injuries.  To begin, the Court does not perceive a
meaningful difference between Aldrich's conduct and the conduct of the shooter in
*Wagner* (or the other mass shooters discussed below).  Nor does the Court see a way
to materially distinguish the alleged nonfeasance of Defendants here with the alleged
nonfeasance of PPRM in *Wagner*.  Plaintiffs' theory of liability under the CPLA is
basically that Defendants failed to maintain adequate security and otherwise keep their
premises safe from foreseeable harms to the LGBTQ+ community.  (ECF No. 74 at 3.)
These allegations are similar to the evidence the *Wagner* majority believed to be
sufficient to survive summary judgment:

Here, the plaintiffs introduced substantial evidence showing
that PPRM knew for many years that there was a risk of
violence against its facilities.  In fact, PPRM warned all new
physicians that 'there is an inherent risk associated with
working [at PPRM],' and it provided them with training on

---

[4] By the Court's reading of *Wagner*, the majority did not fail to consider "whether a third-
party criminal act was the predominant cause of that harm," as the legislative amendment
suggests.  Instead, the *Wagner* majority simply opined that this issue is generally for juries to
consider, not courts.

The General Assembly's amendment therefore indicates to the Court that it intends for
courts to consider—or decide—the predominant causation issue as a matter of law, at least in
mass shooting cases.

how to protect themselves.  PPRM even offered to provide all of these physicians with custom-fitted bulletproof vests, free of charge.

The plaintiffs also presented evidence tending to demonstrate that PPRM knew that the level of threats of violence and criminal activity directed against Planned Parenthood facilities increased exponentially in the aftermath of the release of the inflammatory 'baby body parts' videos. In fact, after the videos were released, the Medical Director of PPRM personally reported the level of increased threats and more invasive actions to both the president and chief executive officer and the chief operating officer of PPRM, as well as to the president and chief executive officer of PPFA.

In addition to the foregoing, the plaintiffs presented evidence that, despite this awareness, PPRM did not take adequate precautions at the Colorado Springs facility.  For example, the plaintiffs offered evidence to show that although PPRM had hired an armed security guard, that guard was on duty only three days per week and only for about four hours each day (until 11:00 a.m. or 12:00 noon), despite the fact that the facility remained open (and doctors were performing abortions there) after the guard had ended his shift.  Indeed, the guard had been at work on the day of the shooting but left at 11:00 a.m., shortly before [the shooter] started his shooting rampage at approximately 11:35 a.m.  Similarly, the plaintiffs offered evidence that PPRM did not erect a perimeter fence around the Colorado Springs facility, although it had done so at its Denver location, and it did not replace its tempered glass entry door with a steel or otherwise bullet-resistant door, which allowed [the shooter] to shoot through the door to gain entry and continue his rampage.

Finally, the plaintiffs presented a lengthy and detailed affidavit from Lance Foster, an expert in premises security. In his affidavit, Mr. Foster opined, in pertinent part, that (1) the lack of security at the PPRM Colorado Springs facility made it a more likely target and placed it at a much higher risk for an event like that which ensued; (2) fencing would likely have prevented [the shooter] from gaining entry onto the facility's property in the first place; (3) had the security guard been on duty, the shootings would likely have been prevented; and (4) had steel doors been installed and electronic lock down measures been employed, [the shooter]

> would not likely have been able to enter the clinic itself.
> Based on the foregoing, Mr. Foster opined that the shootings
> at issue 'were reasonably preventable and the injurious
> effects could have been mitigated.'

*Id.* at 293.

Nevertheless, in the face of all this evidence, the *Wagner* dissent concluded that the defendants were properly entitled to summary judgment—*i.e.*, judgment as a matter of law—because "the premeditated and intentional actions of a mass shooter are the 'predominant' cause of the injuries he inflicts such that any negligence on the part of a property owner simply is not a 'substantial factor' in causing those injuries." *Id.* at 300. The General Assembly sided with the dissent, instructing courts to disregard the *Wagner* majority opinion insofar as it determined "[t]hat a landowner could be held liable as a substantial factor in causing harm without considering whether a third-party criminal act was the predominant cause of that harm." § 13-21-115(e)(I)(b).

Given these factual similarities, as well as the General Assembly's subsequent instruction, the Court must conclude that Aldrich's conduct was the predominant cause of Plaintiffs' injuries and, as a result, that Defendants' alleged omissions were not a substantial factor in, and therefore not the proximate cause of, Plaintiffs' injuries as a matter of law. *Smith*, 749 P.2d at 464.

To be sure, section 13-21-115 (e)(I)(B) does not unequivocally indicate whether juries or courts should decide the predominate cause issue in mass shooting cases. Instead, using passive voice, the statute vaguely instructs that a landowner cannot "be held liable as a substantial factor in causing harm *without considering* whether a third-party criminal act was the predominant cause of that harm . . . ." § 13-21-115 (e)(I)(B) (emphasis added). That is, the General Assembly did not specify whether the

predominant cause inquiry is a fact or legal question in the context of a mass shooter case.

If you ask the *Wagner* majority and Plaintiffs, juries should consider (or decide) the predominant causation issue. (ECF No. 74 at 13.) The *Wagner* majority explained that, "[o]n these facts, we cannot preclude, as a matter of law, the possibility that a reasonable jury could find PPRM's allegedly insufficient security measures to have been a substantial factor in causing the plaintiffs' injuries, even given the magnitude of [the shooter's] premeditated efforts to cause mass casualties without regard for his own survival or capture." *Id.* at 294. Putting a finer point on this, the *Wagner* majority declared that, "on the summary judgment record here, *we do not believe that a court can properly decide the predominant cause issue as a matter of law.*" *Id.* (emphasis added).

By contrast, the *Wagner* dissent all but confirmed that, in the context of a mass shooting case, predominant causation is a legal issue to be decided by courts. It first recognized that, "[w]hile proximate cause is typically a question of fact reserved to the jury, the Court may conclude, as a matter of law, that such a predominant cause exists, and that there can be no other substantial factors." *Id.* at 299 (quoting *Nowlan*, 2016 WL 4092468, at *2). The *Wagner* dissent then went on to treat the predominant cause issue as a legal matter, concluding that "a mass shooter . . . is the predominant cause such that any negligence by PPRM could not be a substantial factor in causing those injuries." *Id.* at 300. Notably, the *Wagner* dissent expressly suggested that jurors should not be tasked with "engag[ing] in the cost/benefit analysis of determining what sorts of preventative measures are sufficient to prevent or mitigate the harm caused by

a shooter's senseless acts of violence."  *Id.* (emphasis added).  In other words, the

*Wagner* dissent casted doubt on the notion that a jury could rationally decide whether a

landowner's nonfeasance was a substantial factor in causing a victim's injuries where a

mass shooter is involved.

To reiterate, the General Assembly appears to have adopted the *Wagner*

dissent's view on the predominant cause issue.  § 13-21-115 (e)(I)(B).  Consistent with

this view, and contrary to Plaintiffs' assertion,[5] federal trial courts in this District have

resolved the predominant cause issue as a matter of law in mass shooting cases for

decades.  Judge R. Brooke Jackson succinctly summarized those decisions as follows:

> Two of my colleagues have addressed the issue of
> proximate cause in mass-shooting cases where the
> defendant is an entity rather than the shooter.  In two
> separate cases involving the Columbine High School
> shootings, Judge Babcock considered whether there could
> be another substantial factor in causing plaintiffs' injuries
> beyond the actions of the two assailants—Eric Harris and
> Dylan Klebold.  First, in *Castaldo v. Stone*, plaintiffs sued the
> Jefferson County School District, the Jefferson County
> Sheriff's Department, and various individuals associated with
> those entities.  92 F.Supp.2d 1124, 1133 (D. Colo. 2001).
> *The court held that "Harris' and Klebold's actions on April 20,*
> *1999 were the predominant, if not sole, cause of Plaintiffs'*
> *injuries."*  *Id.* at 1171.  Later, in *Ireland v. Jefferson County*
> *Sheriff's Department*, the court dismissed plaintiffs'
> negligence claim against the organizer of a gun show at
> which Harris and Klebold purchased a shotgun.  193
> F.Supp.2d 1201, 1231–32 (D. Colo. 2002).  Mirroring the
> analysis in *Castaldo*, the court reasoned that "[e]ven if [the

---

[5] Plaintiffs argue that "Defendants are asking this Court to do what no Colorado court
has done: declare, as a matter of law and without discovery, that a mass shooter's conduct was
the 'predominant cause' of harm under the PLA—effectively erasing the landowner's own
alleged failures from the equation."  (ECF No. 74 at 11.)  As explained below, however, several
courts have decided the predominant causation issue as a matter of law, and at least one did so
at the motion to dismiss stage.  *See Castaldo v. Stone*, 92 F.Supp.2d 1124, 1171 (D. Colo.
2001) ("As a matter of law, Plaintiffs have failed to allege that the individual School Defendants'
conduct was a legal cause of Plaintiffs' injuries.").

> gun show organizer's] actions contributed in some way to Plaintiff's injuries," *the shooters' actions "were the predominant, if not sole cause" of the injuries. Id.* at 1232.
>
> More recently, in *Phillips v. Lucky Gunner, LLC*, Judge Matsch addressed this issue in the context of the Holmes shootings. 84 F.Supp.3d 1216, 1228 (D. Colo. 2015). Plaintiffs sued various gun shops where Holmes had purchased ammunition and other equipment that he used in the mass shooting. *Id.* Plaintiffs' daughter died in the attack, and plaintiffs alleged, among other claims, that the gun-shop entities were liable on negligence grounds. *Id.* Judge Matsch dismissed the negligence claim, holding that, even if he were to find that defendants owed a duty of care, *defendants' sales of ammunition and other items to Holmes did not proximately cause the plaintiffs' daughter's death. Id.*

*Nowlan*, 2016 WL 4092468, at *3 (emphases added).

Furthermore, in *Nowlan*, a case arising from the mass shooting at the Century Aurora 16 movie theater in Aurora, Colorado on July 20, 2012, Judge Jackson followed suit, reasoning that even if "defendants failed to provide certain safety measures such as placing an alarm on the exit door or employing security officers on the evening in question," the shooter's "premeditated and intentional actions were the predominant cause of plaintiffs' losses." *Id.* As such, Judge Jackson concluded "that a reasonable jury could not plausibly find that Cinemark's actions or inactions were a substantial factor in causing this tragedy," and "[t]herefore, as a matter of law, defendants' conduct was not a proximate cause of plaintiffs' injuries." *Id.*

Thus, in light of *Castaldo*, *Ireland*, *Phillips*, *Nowlan*, and the *Wagner* dissent—which was blessed by the General Assembly—the Court reluctantly concludes that the predominant cause issue is appropriate to decide as a matter of law in this mass shooting case. This means that the Court must further conclude that Aldrich's conduct was the predominant cause of Plaintiffs' injuries and dismiss their CPLA claim.

Plaintiffs do not persuasively explain why these analogous mass shooting cases do not compel dismissal here.  (ECF No. 74 at 12–13.)  Instead, they rely heavily on two other civil cases stemming from the mass shooting at the Century Aurora 16 movie theater in Aurora: *Traynom v. Cinemark USA, Inc.*, 940 F.Supp.2d 1339 (D. Colo. 2013), and *Axelrod v. Cinemark Holdings, Inc.*, 65 F.Supp.3d 1093 (D. Colo. 2014).  (*Id.* at 10–11, 13–14.)  But those cases do not advance Plaintiffs' cause.

In *Traynom*, Judge Jackson declined to dispatch the plaintiffs' CPLA claim at the dismissal stage, concluding that the plaintiffs had sufficiently alleged that the defendant (1) knew or should have known of the "danger latent in the construction and operation of the theater," and (2) did not "exercise reasonable care to protect patrons against this danger."  *Id.* at 1344–45.  *Traynom's* analysis, however, hinged on duty, not causation. *Id.*  Indeed, the term "predominant causation" does not appear anywhere throughout Judge Jackson's[6] order.  Likewise, *Axelrod* turned, again, only on duty, not causation. *See id.* at 1098 ("[T]he sole question posed by the motion can be stated simply: is there a genuine dispute of fact as to whether Cinemark knew or should have known of the danger faced by the patrons in Auditorium 9 on July 20, 2012?").  These decisions therefore do not refute the Court's predominant cause analysis here.

Plaintiffs understandably resist this result and the Court's reading of the law,

---

[6] Magistrate Judge Michael E. Hegarty's recommendation, appended to Judge Jackson's *Traynom* order, did address causation, opining that it would "[c]ertainly" be "improper at this early stage of the litigation" "to find that the sole cause of Plaintiffs' injuries was the mass shooting."  940 F.Supp.2d at 1355–56.  But Judge Jackson did not expressly adopt this portion of Judge Hegarty's analysis, acknowledging that, while he accepted Judge Hegarty's recommendation to deny the motion to dismiss, he "analyz[ed] the case a little differently in some respects . . . ."  *Id.* at 1345.  Tellingly, Judge Jackson later found that predominant causation could be decided as a matter of law in *Nowlan*.  2016 WL 4092468, at *3.

which they say "create[s] blanket immunity for property owners whenever a mass
shooting occurs—no matter how foreseeable the threat, how glaring the security lapses,
or how directly those failures contributed to the harm."  (ECF No. 74 at 11.)  The Court
shares Plaintiffs' concerns and bristles at the idea that utterly foreseeable mass
shootings can continue to occur with little to no civil recourse for victims.  By closing the
courthouse doors to mass shooting victims under the CPLA, the General Assembly has
essentially given landowners *carte blanche* to implement *zero* safety precautions
against obvious—or even known—threats of violence by deranged individuals.

These same policy considerations, however, were before the General Assembly
in the wake of *Wagner*.  The *Wagner* dissent supplied reasons for why it believed
permitting liability under the CPLA in a mass shooting case is unwise, explaining that,
"by shifting the risk posed by mass shooters to landowners and increasing the potential
for liability," this, "in turn, makes women's health clinics"—and other businesses that
serve minority communities or offer controversial services (in the eyes of some)—"both
prohibitively expensive to operate and virtually impossible to insure."  *Id.* at 301.  The
General Assembly was evidently persuaded by this reasoning, despite the *Wagner*
majority's warning that the dissent's view of the law could effectively mean "that
summary judgment is required in virtually every case involving a mass shooting
because the shooter's actions will almost always be the predominant cause of the
victims' injuries."  *Id.* at 300.

Putting the prudence of this decision aside, "it is not up to courts to make or
weigh policy."  *Kaiser v. Aurora Urb. Renewal Auth.*, 541 P.3d 1180, 1191 (Colo. 2024).
Rather, the Court must respect the General Assembly's policy judgment—

notwithstanding how strongly it disagrees with it—to "promote private property rights," "foster the availability and affordability of insurance," and "protect landowners from liability," even if at the expense of Plaintiffs' civil recovery in this most tragic case.  § 13-21-115(1.5)(d), (e).

For all these reasons, the Court must dismiss the CPLA claim.

### B.  Negligence and Wrongful Death Claims

Defendants move to dismiss the negligence and wrongful death claims on the ground that the CPLA "is the exclusive remedy" to redress Plaintiffs' injuries.  (ECF No. 34 at 18.)  This is so, Defendants contend, because Plaintiffs allege that their injuries occurred on Defendants' land.  (*Id.*)

Recall that the CPLA "provides the sole remedy against landowners for injuries on their property."  *Martinez*, 2025 WL 865402, at *1.  Surely, most of Plaintiffs' claimed injuries allegedly occurred as a result of the conditions, activities, or circumstances that existed at Club Q, thereby triggering the exclusive application of the CPLA.  § 13-21-115(2).

Nevertheless, the Colorado Supreme Court has clarified that the CPLA does not apply "to any tort that happens to occur on another's property."  *Larrieu v. Best Buy Stores, L.P.*, 303 P.3d 558, 559 (2013).  "Instead," the supreme court continued, "the premises liability statute applies to conditions, activities, and circumstances on the property that the landowner is liable for in its legal capacity as a landowner."  *Id.*  The supreme court advised that determining whether the CPLA precludes common law relief "necessitates a fact-specific, case-by-case inquiry into whether: (a) the plaintiff's alleged injury occurred while on the landowner's real property; and (b) the alleged injury

occurred by reason of the property's condition or as a result of activities conducted or circumstances existing on the property."  *Id.*

Plaintiffs maintain that they have "describe[d] a broader pattern of misconduct" beyond "allegations about the premises layout."  (ECF No. 74 at 15.)  Specifically, Plaintiffs complain about "targeted corporate decisions, training, and staffing" deficiencies, which allegedly caused their injuries.  (*Id.* at 16.)  In light of these allegations, the Court will not decide this fact-intensive inquiry to reflexively dismiss the negligence and wrongful death claims.  Defendants are free to reassert these arguments, and any others, after discovery has run its course.

## IV.    CONCLUSION

For the foregoing reasons, the Court ORDERS as follows:

1.  Defendants G.I.G., Inc., Club Q, LLC, and Academy 3430, LLC's motion for leave (ECF Nos. 35, 59) to join 3430 N. Academy, LLC and Haynes's motion to dismiss is GRANTED; and

2.  Defendants' motion to dismiss (ECF Nos. 34, 58) is GRANTED as to the CPLA claim but DENIED as to the negligence and wrongful death claims.

Dated this 26th day of June, 2025.

BY THE COURT:

William J. Martínez
Senior United States District Judge