IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLORADO

Civil Action No. 24-cv-3190-WJM-MDB
Consolidated with Civil Action No. 1:24-cv-3193-WJM-MDB

ADRIANA VANCE, as natural mother of Raymond Greed, deceased, and as Personal Representative of the Estate of Raymond Green, *et al.*,

    Plaintiffs,

v.

EL PASO COUNTY BOARD OF COUNTY OF COMMISSIONERS, *et al.*,

    Defendants.
_____

**CLUB Q DEFENDANTS' <u>PARTIALLY UNOPPOSED</u> MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(1) OR, IN THE ALTERNATIVE, TO DECLINE TO EXERCISE SUPPLEMENTAL JURISDICTION PURSUANT TO 28 U.S.C. § 1367(C)**
_____

Defendants Club Q, LLC, G.I.G., Inc., Matthew Haynes, 3430 N. Academy LLC, and Academy3430 LLC ("Club Q Defendants"), by and through their respective counsel, submit their Partially Unopposed Motion to Dismiss Pursuant to Fed. R. Civ. P. 12(b)(1) or, in the Alternative, to Decline to Exercise Supplemental Jurisdiction Pursuant to 28 U.S.C. § 1367(c) ("Motion") as follows:

**<u>Statement Concerning WJM Revised Practice Standards.</u>**

Pursuant to WJM Revised Practice Standard III.D.1, counsel certifies that he conferred with counsel for Plaintiffs regarding the relief requested in this Motion. Plaintiffs oppose dismissal pursuant to Fed. R. Civ. P. 12(b)(1) but have <u>no objection</u> to the Court declining to exercise supplemental jurisdiction over the remaining claims in this action

pursuant to 28 U.S.C. § 1367(c). Furthermore, counsel for Club Q Defendants certifies that he does not believe the jurisdictional defect at issue in this Motion is correctable by the filing of an amended pleading.

Club Q Defendants previously filed a motion to dismiss pursuant to Fed. R. Civ. P. 12(b)(6) and acknowledge that WJM Revised Practice Standard III.D.2 requires all "requests for relief under any part of Rule 12 must be brought as a single motion." *See* ECF Nos. 32, 35, 58, 59. However, a challenge to this Court's subject matter jurisdiction may be raised at any time. *See Henderson ex rel. Henderson v. Shinseki*, 562 U.S. 428, 434 (2011)). Indeed, the Court "has an independent and continuing duty to determine whether subject matter jurisdiction exists." *Strich v. United States*, 793 F. Supp. 2d 1238, 1241, n. 1 (D. Colo. 2011). This is particularly true because this Court recently dismissed the sole claims over which it had original jurisdiction. *See* ECF No. 105.

## INTRODUCTION

Plaintiffs filed this case against two separate groups of defendants seeking to hold them liable for the horrific shooting at Club Q in Colorado Springs on November 19, 2022, in which Anderson Lee Aldrich ("Aldrich") fatally shot five individuals and injured many more. *See* Second Amended Compl. ("SAC"), ECF. 26.[1] The first group of defendants are the El Paso County Board of County Commissions and former Sheriff Bill Elder ("El Paso County Defendants") who were sued under 42 U.S.C. § 1983 for allegedly failing to

---

[1] This case was consolidated with *Hudson v. El Paso Cty.*, 24-cv-3193-WJM-MDB. *See* ECF No. 55. The operative complaint in *Vance* is the SAC filed at ECF No. 29, and the one in *Hudson* at ECF No. 56. They are substantively identical. In its most recent orders, the Court cited to the SAC. *See* ECF No. 105. Club Q Defendants thus do the same.

2

pursue an Extreme Risk Protection Order ("ERPO") against Aldrich prior to the shooting. The second group includes the Club Q entities and their owner, Matthew Haynes, against whom Plaintiffs assert common-law negligence and wrongful death claims based on allegedly failing to implement adequate security measures, such as hiring trained security personnel, installing metal detectors, or using other protective protocols.[2]

The sole basis for original federal jurisdiction were the constitutional claims under 42 U.S.C. § 1983 against the El Paso County Defendants which this Court dismissed on July 7, 2025. *See* SAC, ¶ 36; ECF No. 105. Plaintiffs invoked this Court's supplemental jurisdiction under 28 U.S.C. § 1367 to bring the state-law premise liability, negligence, and wrongful death claims against the Club Q Defendants. SAC, ¶ 37. But supplemental jurisdiction has limits. It extends only to claims that share a "common nucleus of operative fact" with those over which the Court has original jurisdiction. *See Price v. Wolford*, 608 F.3d 698, 702–03 (10th Cir. 2010) (internal quote marks omitted). Here, that threshold was not met when Plaintiffs filed these actions. Although all claims arise from the same tragic shooting, the constitutional claims against government actors and the negligence claims against private defendants involve different legal theories, duties, elements, and bodies of evidence. There is no common nucleus of operative facts tying them together.

Indeed, the magistrate judge assigned to this case observed that the two groups of claims are distinct:

---

[2] Plaintiffs also filed intentional tort claims against Aldrich in the *Hudson* case. Aldrich is in default. Club Q takes no position as to dismissal of the claims against him.

3

> [T]he answer to [the] question of how interrelated are these claims is **not very much**. … [I]n this case, it strikes me that the claims against the County are kind **of a totally different case** than the claims against the rest of the defendants.

See Exhibit A, Tr. 4:6-13 (emphasis added).[3] The magistrate judge was right: The claims, while sharing a general background, are disparate. Accordingly, the Court lacks supplemental jurisdiction over the state-law claims, and they must be dismissed.

But even if there were a common nucleus of operative facts, this Court should decline to exercise supplemental jurisdiction pursuant to 28 U.S.C. § 1367(c) because the Court has now dismissed all claims over which it had original jurisdiction.

## FACTUAL BACKGROUND[4]

I.   **Allegations Against the El Paso County Defendants.**

Plaintiffs allege that Aldrich had a history of threats and violent conduct, including a 2021 incident in which he was arrested after threatening to kill his grandparents and carry out a mass shooting. The El Paso County Sheriff's Office responded with a SWAT team, and law enforcement recovered firearms, ammunition, and materials consistent with bomb-making. (SAC, ¶¶ 97–109.) Aldrich was charged with multiple felony offenses, but the criminal case was ultimately dismissed in 2022. (Id., ¶¶ 108, 119.)

---

[3] These comments were made in the context of a motion to stay discovery and not on the issue of supplemental jurisdiction. See Exhibit A, Tr. 20:25-21:8. Club Q Defendants argued in favor of a stay, in part, because of the overlap of certain discovery but posited that the supplemental jurisdiction issue would likely arise. Id. at 15:4-22.

[4] Club Q Defendants mount a facial attack on the Court's subject matter jurisdiction and accepts as true the well-pleaded allegations of the SAC. See City of Albuquerque v. U.S. Dep't of Interior, 379 F.3d 901, 906 (10th Cir. 2004).

4

Despite these allegations and the availability of Colorado's ERPO law, Plaintiffs contend that El Paso County and Sheriff Elder failed to file a petition to remove Aldrich's access to firearms, thereby allowing him to retain weapons used in the Club Q shooting. (*Id.*, ¶¶ 223, 246.) Plaintiffs attribute this alleged inaction to El Paso County's 2019 resolution declaring itself a "Second Amendment Sanctuary" and pledging to "actively resist" enforcement of the Red Flag Law. (*Id.*, ¶¶ 82-96.) Sheriff Elder allegedly adopted similar policies within his department, limiting ERPO petitions to narrow circumstances involving existing probable cause. (*Id.*, ¶ 95.)

Plaintiffs emphasize that, by the time of the shooting, the Sheriff's Office had not filed a single ERPO petition under the law (*Id.*, ¶ 96.) They allege this amounted to a deliberate policy of non-enforcement that violated constitutional rights under the Fourteenth Amendment. (*Id.*, ¶¶ 235-35.) However, the SAC does not allege that the County or Sheriff had actual knowledge of Aldrich's plan to target Club Q, or that any ERPO request was presented and denied.

Based on these allegations, Plaintiffs brought claims under Section 1983, arguing that El Paso County Defendants violated their constitutional rights by failing to disarm Aldrich and by adopting policies that allegedly placed the public at greater risk. The SAC does not allege that anyone at El Paso County had specific knowledge that Aldrich intended to attack Club Q or any other LGBTQ venue, nor does it allege that any ERPO was requested by a family member or outside party and declined.

On July 7, 2025, this Court dismissed Plaintiffs' claims against the El Paso County Defendants. (*See* ECF No. 105.)

II.     **Allegations Against the Club Q Defendants.**

Plaintiffs also assert state-law premises liability, negligence, and wrongful death claims against the Club Q entities and their owner, Matthew Haynes, alleging that they failed to provide adequate security at the venue. According to the SAC, Club Q previously employed a team of security personnel, including at least one armed guard, but by 2022 had reduced security to a single unarmed employee, Jeremiah Griffith, who also worked as a barback and food runner. (*Id.*, ¶¶ 7-9.)

Plaintiffs allege that Griffith lacked formal training, had a criminal background, and was not licensed to provide security services. (*Id.*, ¶¶ 150–151.) The club allegedly had no formal policies for pat-downs or bag checks, did not use metal detectors, and had no exterior staff posted to monitor patrons entering the venue. (*Id.*, ¶¶ 170–171.) Although Club Q had acquired handheld metal detectors, Plaintiffs allege that Haynes chose not to use them out of concern for the club's image. (*Id.*, ¶ 172.)

Further, Plaintiffs allege that the physical layout of the club posed safety risks: the main egress door was blocked, and the patio area was fully enclosed by a fence, which patrons had to break through in order to escape. (*Id.*, ¶¶ 158–159.) The SAC also alleges the club lacked fire safety planning, active shooter protocols, or emergency training for staff. (*Id.*, ¶¶ 160–164.)

Plaintiffs contend that Club Q should have anticipated the risk of a mass shooting due to a combination of factors: the 2016 Pulse nightclub massacre, prior security incidents at the venue, threats received in the weeks leading up to the shooting, and the timing of the attack on the eve of Transgender Day of Remembrance. (*Id.*, ¶¶ 177–185.)

Nevertheless, the SAC contains no allegation that Club Q received a specific, actionable threat from Aldrich or any third party prior to the incident.

On June 26, 2025, the Court dismissed Plaintiffs' premise liability claims against the Club Q Defendants. (*See* ECF No. 97.) Thus, the only remaining claims against the Club Q Defendants are the negligence and wrongful death claims.

## ARGUMENT

### I. The Court Lacks Subject Matter Jurisdiction.

#### A. Legal Standard.

Federal courts are courts of limited jurisdiction. *See Min. Res. Int'l v. U.S. Dep't of Health & Hum. Servs.*, 53 F.3d 305, 307 (10th Cir. 1995). Federal courts are to "presume no jurisdiction exists absent a showing of proof by the party asserting federal jurisdiction." *Id*. Fed. R. Civ. P. 12(b)(1) empowers a court to dismiss claims over which it lacks subject matter jurisdiction. Such motions take one of two forms: a facial attack on the sufficiency of the allegations in the complaint as to jurisdiction or (2) a challenge to the facts on which the party invoking jurisdiction rests. *See Strich v. United States*, 793 F. Supp. 2d 1238, 1240–41 (D. Colo. 2011). Where, as here, the movant makes a facial attack to jurisdiction, the court presumes the truth of the well-pleaded allegations in the complaint. *See City of Albuquerque*, 379 F.3d at 906.

#### B. The Court Lacks Supplemental Jurisdiction Over the Claims Against the Club Q Defendants.

Plaintiffs asserted claims under 42 U.S.C. § 1983 against El Paso County and former Sheriff Bill Elder alleging constitutional violations based on a failure to enforce Colorado's ERPO statute. Separately, Plaintiffs asserted state-law premise liability,

7

negligence, and wrongful death claims against the Club Q Defendants—private parties who allegedly failed to implement reasonable security precautions at a nightclub. These two groups of claims, while related in a broad narrative sense, arise from different events and involve different legal duties, actors, and claims. As such, the Court lacks supplemental jurisdiction over the claims against the Club Q Defendants under 28 U.S.C. § 1367(a), because they do not form part of the same Article III "case or controversy."

### 1. Supplemental Jurisdiction Requires a Common Nucleus of Operative Fact, Not Just a Common Tragedy.

A party invoking supplemental jurisdiction bears the burden of establishing that state-law claims fall within the Court's statutory and constitutional authority. Under Section 1367(a), district courts may only exercise supplemental jurisdiction over state-law claims that are "so related to claims in the action within such original jurisdiction that they form part of the same case or controversy under Article III." The Supreme Court has long held that this test requires that the claims derive from a "common nucleus of operative fact." *United Mine Workers v. Gibbs*, 383 U.S. 715, 725 (1966); *see also Price*, 608 F.3d at 702.

That requirement is not satisfied merely because claims share a factual backdrop or arise from the same general incident. Rather, the claims must involve "a tight nexus" of factual and legal issues, such that a plaintiff "would ordinarily be expected to try them all in one judicial proceeding." *Gibbs*, 383 U.S. at 725. A "mere tangential overlap of facts is insufficient[.]" *Nanavati v. Burdette Tomlin Mem'l Hosp.*, 857 F.2d 96, 105 (3d Cir. 1988). Indeed, "state-law claims that only relate generally to federal claims through a broader dispute and do not share any operative facts are insufficient for supplemental jurisdiction." *AngioScore, Inc. v. TriReme Med., LLC*, 666 F. App'x 884, 887 (Fed. Cir. 2016) (internal

8

quotation omitted); *see also Berg v. BCS Fin. Corp.*, 372 F. Supp. 2d 1080, 1093 (N.D. Ill. 2005) ("Supplemental jurisdiction does not exist where the federal and state claims merely share a factual background.").

To determine whether claims form part of the same case or controversy, courts consider whether they involve "the same witnesses, presentation of the same evidence, and determination of the same, or very similar, facts." *Warming Trends, LLC v. Flame DesignZ, LLC*, 2023 WL 196288, at *5 (D. Colo. Jan. 17, 2023); *see also Lyndonville Sav. Bank & Trust Co. v. Lussier*, 211 F.3d 697, 704 (2d Cir. 2000) (a sufficient relationship will be found if "the facts underlying the federal and state claims substantially overlap or where presentation of the federal claim necessarily brings the facts underlying the state claim before the court") (cleaned up); *Palmer v. Hosp. Auth. of Randolph Cty.*, 22 F.3d 1559, 1563–64 (11th Cir. 1994) (same).

Applying that framework here, the claims against the Club Q Defendants do not form part of the same case or controversy as the now-dismissed federal Section 1983 claims against the El Paso County Defendants.

### 2. The Federal and State Claims Rest on Distinct Facts, Legal Theories, and Evidence.

The claims against El Paso County Defendants share an overlap of certain background facts with the claims against Club Q Defendants. However, the claims are distinct, do not "share common elements," and the "evidence needed to support each claim" is different. *Smith v. Esports One, Inc.*, 2024 WL 4502320, at *3 (E.D. Wis. Oct. 16, 2024). While the claims both involve the Club Q shooting, there is little in common as to how they will be presented at trial. *See Wildearth Guardians v. Lamar Utilities Bd.*, 2010

WL 3239242, at *7 (D. Colo. Aug. 13, 2010) (holding that court lacked supplemental jurisdiction because while claims were involved the same project, they differed in how they would be presented at trial).

The constitutional claims against the El Paso County Defendants centered on a specific legal theory: that a government entity and its policymaker violated the Fourteenth Amendment by failing to enforce a state statute designed to prevent gun violence. These claims implicated complex questions of municipal liability under *Monell v. Dept. of Social Serv's*, 436 U.S. 658 (1978), constitutional limits on state inaction, the discretionary function doctrine, and qualified immunity. The factual allegations focused on the County's alleged designation as a "Second Amendment Sanctuary," its refusal to seek ERPOs, and its handling of the shooter's 2021 arrest and criminal case.

By contrast, the claims against the Club Q Defendants rest entirely on a different theory: that private business owners owed a common-law duty to patrons under Colorado tort law and breached that duty by failing to implement adequate security measures. The relevant legal issues include premises liability standards, foreseeability of third-party criminal acts, and the reasonableness of security staffing and procedures. The Club Q claims do not involve any governmental conduct, statute, or constitutional questions.

Each claim group thus requires different:

- Legal elements (constitutional violations vs. state tort duties);
- Legal standards (deliberate indifference, policy/custom vs. negligence, foreseeability);

- Key witnesses (county officials, law enforcement vs. club owners, staff, patrons);

- Documentary evidence (government policies, ERPO filings vs. staffing records, surveillance footage);

- Expert testimony (law enforcement standards vs. security operations or nightclub safety).

No finding on the Section 1983 claims – had they survived – would have impacted any element of the negligence claims, or vice versa. For example, proving that El Paso County had a policy of not using ERPOs does not prove that Club Q's exit doors were blocked, that its staff was untrained, or that any duty under Colorado law was breached. The two claim sets are simply not factually or legally interdependent.

Numerous courts have found supplemental jurisdiction lacking under similar circumstances. In *Ballentine v. Birkett*, 2013 WL 3467193, at *2 (N.D. Ind. July 10, 2013), the court dismissed negligence claims against a private defendant for lack of supplemental jurisdiction where they were based on facts independent from the Section 1983 claims against government defendants. The court reasoned that the allegations against the different defendants "raise distinct facts and legal issues" and resolution of one group of claims "would not impact the claims against the other." *Id*. Thus, any "factual overlap does not go to the operative facts necessary to establish the separate claims" *Id*.; *see also Angsten v. Blameuser*, 2005 WL 3095513, at *5 (N.D. Ill. Nov. 16, 2005).

*Jones v. Haga,* 2006 WL 2038006, at *6 (D. Colo. July 17, 2006), is instructive. In that case, the plaintiffs brought 11 causes of action against 15 defendants. The sole basis

for original jurisdiction was a Section 1983 municipal liability claim against one government actor. The court held it lacked supplemental jurisdiction over civil conspiracy and tortious interference claims against the private defendants because no actions of the government defendant were "implicated by the state law claims." *Id*. Citing *Monell*, 436 U.S. 690-91, the court noted that the Section 1983 claim required proof of "a preexisting governmental policy or custom leading to the violation of his constitutional rights" or such inadequacy of police training as to constitute deliberate indifference[.]" *Id*. These facts, according to the court, would not implicate the factual nucleus of whether other defendants separately engaged in tortious conduct. In short, no actions by the government defendant, "specifically its policies or training or lack thereof, are implicated by the other state law claims." *Id*.

Similarly, in *Angsten*, the court held it lacked supplemental jurisdiction over state law claims that shared "a general factual background" with plaintiff's Section 1983 claims against the chief of police for denial of equal protection of the law because "the operative facts necessary for the tort claims [were] wholly unrelated to the operative facts essential to the elements of the Section 1983 claim." 2005 WL 3095513, at *5. The court found the "factual investigation and evidentiary support required to succeed on "the state-law claims" would "go far beyond" what was required for the Section 1983 claim, which focuses on the government actor's "conduct and rationale." *Id*. As the court in *Angsten* put it: the claims were not interdependent because "if the federal claim was resolved, the state-law claims could continue unaffected, and vice versa." *Id*.

Here, too, the Club Q claims are distinct from the federal claims and require no resolution of the facts underlying the constitutional claims. Any overlap is superficial and incidental—at most, the shooter's identity and the date of the attack—but that is not the type of "common nucleus" that supports supplemental jurisdiction. In theory, Plaintiffs could have proven their claims against El Paso County Defendants without ever proving that Club Q Defendants were negligent. *See M.M.A. Design, LLC v. Capella Space Corp.*, 2020 WL 789190, at *2–3 (D. Colo. Feb. 18, 2020) (holding that claims lacked common facts for purposes of supplemental jurisdiction where it was "entirely possible" for party to prove its claims "without ever reaching the facts" of the other claims). Thus, the facts of the state-law claims are clearly distinct from the facts needed to establish Section 1983 claim. *See Berg*, 372 F. Supp. 2d at 1092 (same general incident insufficient).

## II. Alternatively, the Court Should Decline to Exercise Supplemental Jurisdiction Now that It Has Dismissed the Claims Over which It Had Original Jurisdiction.

The Court lacks supplemental jurisdiction under 28 U.S.C. § 1367(a) for the reasons set forth above. If this Court disagrees, it should nonetheless decline to exercise jurisdiction under Section 1367(c)(3) because it has now "dismissed all claims over which it has original jurisdiction." Dismissal under this section is discretionary. However, the Tenth Circuit has stated that "[w]hen all federal claims have been dismissed, the court may, and *usually should*, decline to exercise jurisdiction over any remaining state claims." *Koch v. City of Del City*, 660 F.3d 1228, 1248 (10th Cir. 2011) (emphasis added); *see also Dahlberg v. Avis Rent A Car Sys., Inc.*, 92 F. Supp. 2d 1091, 1110–11 (D. Colo. 2000).

13

"In considering whether to exercise supplemental jurisdiction, 'a federal court should consider and weigh in each case, and at every stage of the litigation, the values of judicial economy, convenience, fairness, and comity in order to decide whether to exercise jurisdiction over a case brought in that court involving pendent state-law claims.'" *Lucero v. Gordon*, 2018 WL 6599830, at *6 (D. Colo. Dec. 17, 2018) (quoting *Carnegie-Mellon Univ. v. Cohill*, 484 U.S. 343, 350 (1988)). In the interest of comity and federalism, district courts should be mindful against making "[n]eedless decisions of state law." *TV Comm. Net., Inc. v. Turner Net. Television, Inc.*, 964 F.2d 1022, 1028 (10th Cir. 1992).

This case is not close to trial—in fact, discovery only recently began and no depositions have occurred. Moreover, the only remaining claims in this case arise under Colorado state law. Federal law is not even implicated in any of the remining affirmative defenses. As a matter of federalism and comity, there is no compelling reason why this action should be tried in federal, and not state, court. *See id*. The Court should therefore decline to exercise supplemental jurisdiction. *See Vercos v. Bd. of Cnty. Comm. for Cnty. of El Paso*, 259 F. Supp. 3d 1169, 1178 (D. Colo. 2017) (declining to exercise supplemental jurisdiction after court dismissed all federal claims). Importantly, Plaintiffs have no objection to the Court declining to exercise supplemental jurisdiction.

WHEREFORE, the Court should grant this Motion and dismiss what remains of this case for want of supplemental jurisdiction or, in the alternative, decline to exercise it.

Respectfully submitted this 16th day of July, 2025.

*/s/ Jonathan M. Abramson*
Jonathan M. Abramson
Paul D. Godec
SGR, LLC
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
(303) 320-0509
pgodec@sgrllc.com
jabramson@sgrllc.com

*Attorneys for 3430 North Academy, LLC and Matthew Haynes*

*/s/ Michael D. Kuhn*
Michael D. Kuhn
Cameron L. Caldwell
KLCS PC
431 N Cascade Ave, Ste. 1,
Colorado Springs, CO 80903
Phone:  (719) 215-8000
Fax:     (719) 457-5366
Email: mkuhn@klcs.law
            ccaldwell@klcs.law

*Attorney for Defendants G.I.G., Club Q LLC, and Academy3430*

# CERTIFICATE OF SERVICE

I hereby certify that on this 16th day of July 2025, a correct copy of the above and foregoing was served on the following:

Bradley T. Bufkin
Matthew L. Schneider
Bufkin & Schnider Law, LLC
2 N. Nevada, Suite 1140
Colorado Springs, CO 80903
brad@bbmslaw.com
matthew@bbmslaw.com
*Attorneys for Consolidated Plaintiff and Interested Party Barrett Hudson*

Nathan J. Whitney
Bryan E. Schmid
El Paso County Government
200 S. Cascade Ave.
Colorado Springs, CO 80903
nathanwhitney@elpasoco.com
bryanschmid@elpasoco.com
*Attorneys for El Paso County Defendants*

Roberta J. Sunkin
Allan D. NewDelman, P.C.
80 East Columbus Avenue
Phoenix, AZ 85012
anewdelman@adnlaw.net
*Bankruptcy Attorney for Defendant Nicholas Grzecka*

Antonio M. Romanucci
Patrick A. Huber
Sarah M. Raisch
Romanucci & Bladin, LLC
321 N. Clark Street, Suite 900
Chicago, IL 60654
aromanucci@rblaw.net
phuber@rblaw.net
sraisch@rblaw.net
*Attorneys for Vance Plaintiffs*

Paul D. Godec
Jonathan Abramson
3900 East Mexico Avenue, Suite 700
Denver, Colorado 80210
(303) 320-0509
pgodec@sgrllc.com
jabramson@sgrllc.com
*Attorneys for 3430 North Academy, LLC and Matthew Haynes*

**Via U.S. Mail, First-Class**
Nicholas Grzecka
4202 N. 28th St., Suite 14
Phoenix, AZ 85016
nicgrzecka@gmail.com
*Defendant Pro Se*

/s/ Kamryn N. Bohlken